***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Gillen and the briefs and arguments of the parties. The appealing parties have not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and this claim. *Page 2 
2. An employer-employee relationship existed between plaintiff and defendant-employer.
3. Defendant-employer was self-insured with Broadspire Insurance Company as administrator.
4. Plaintiff's appropriate average weekly wage is $517.92.
5. The following items were stipulated into evidence:
 a. The Pre-Trial Agreement, labeled as stipulated exhibit 1.
 b. A bound stack of various documents and medical records, tabbed 1-10 and labeled as stipulated exhibit 2.
 c. Plaintiff's Form 22 Wage Chart, labeled as stipulated exhibit 3.
 d. The Form 19 filed in this matter, labeled as stipulated exhibit 4.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. The employee, age 59 at the time of the hearing before the Deputy Commissioner, worked as a finishing operator and also as a cut and fold operator for the employer-defendant for a total of 9 years, from 1995 to January 28, 2005. Defendant-employer manufactures clothing labels.
2. The "finishing operator" job involved feeding of ribbon into a finishing machine. There was conflicting testimony regarding the amount of time plaintiff was required to spend untangling knots in this ribbon as it was fed into the machine. *Page 3 
3. The "cut and fold" job involved the processing of ribbon that is cut into individual labels. This required inspecting labels, making boxes, packing the labels in boxes, and closing the boxes. Plaintiff testified that she had performed the cut and fold job for the last one and a half years of her employment with defendant-employer.
4. Plaintiff was sent by her family doctor to Dr. Edward Hill for evaluation. Dr. Hill diagnosed right acute and chronic carpal tunnel syndrome and tardy ulnar nerve palsy. Given the hypothetical facts supplied by plaintiff's counsel, when asked if plaintiff's work with defendant-employer was a causative factor in her development of these conditions, Dr. Hill testified: "yes, I'd be suspicious." When asked further about his degree of confidence in his causation opinion, Dr. Hill explained: "Okay, I'm more than 50 percent concerned, but — you know — and to answer more than that, I'd like to see — I'd love to see or have someone see — no, I'll take that back. I would — I'd just — I'd love to see what that job looks like."
5. When asked if he was more than 50% certain that plaintiff's work with defendant-employer put her at an increased risk of contracting her conditions as compared to members of the general population, Dr. Hill answered: "Well, yes, sir, on the basis of what was described to me there. I don't discount what the ergonomics person said, but I wonder how accurate their information was. If their information was accurate then what — what I'm telling you is — could be off base."
6. Plaintiff was treated by Dr. Byron Dunaway, a Statesville orthopedist, beginning on April 22, 2004. On December 20, 2004, Dr. Dunaway performed a left endoscopic carpal tunnel release. On December 27, 2004 he performed a right carpal tunnel release and right cubital tunnel release with ulnar nerve transposition. *Page 4 
7. Dr. Dunaway testified that he is more than 50% confident that plaintiff's work for defendant-employer put her at greater risk of carpal tunnel syndrome than the general population and that he is more than 50% confident that plaintiff's work for defendant-employer caused her carpal tunnel syndrome. However, Dr. Dunaway also testified to the contrary in the same deposition. Dr. Dunaway testified that he did not have enough information to make a determination as to whether plaintiff had a repetitive motion job, explaining: "I don't. I really don't. And it — it seems to be at times it's a — it really is a judgment call, how much repetitive is repetitive."
8. Dr. Dunaway testified unambiguously that plaintiff's right cubital tunnel problem, in his opinion, was not related to her work, explaining that plaintiff had no history of direct trauma to her right elbow and that cubital tunnel syndrome is not associated with repetitive motion.
9. Defendant-employer laid off plaintiff on January 28, 2005 as part of a large force reduction. Plaintiff's termination was not related to her workers' compensation case or her physical condition.
10. On September 7, 2005 plaintiff began treatment with Dr. Kathryn Caulfield, a Gastonia hand surgeon. Dr. Caulfield testified that plaintiff's work for defendant-employer put her at greater risk of contracting carpal tunnel syndrome than the general population and furthermore that plaintiff's work for defendant-employer caused her carpal tunnel syndrome. Dr. Caulfield expressed "moderate" confidence in those opinions. However, Dr. Caulfield also testified that she had not seen either job performed and that she had relied on the description of the jobs she received from plaintiff and plaintiff's attorney. She also testified that she was *Page 5 
unaware that an ergonomic study had been done and the findings of an ergonomic study could change her opinions.
11. Because plaintiff questioned the sufficiency of the job videos initially produced in this matter, additional video was taken subsequent to the January 16, 2006 hearing. Although plaintiff denied the validity of the video taken subsequent to the hearing, Wes Blakely, the dying/ finishing manager for defendant-employer, Nicole Her, and Judy Welborn, cut /fold operators for defendant-employer, each testified that the supplemental video accurately reflected the finishing operator and cut and fold jobs, respectively.
12. Mr. Blakely specifically testified that the machine in the supplemental video was running as fast as it possibly could without intervention of a mechanic, and that it was set at the maximum speed at which good results could be achieved with the material being used.
13. Al Gorrod, an ergonomic evaluator, testified live at the hearing and by deposition subsequent to the hearing. Mr. Gorrod testified subsequently by deposition in order to discuss the supplemental video and its impact on his opinions. Mr. Gorrod was present at defendant-employer's facility during the taking of the supplemental video, as was plaintiff.
14. Mr. Gorrod uniformly testified that, in his opinion as an ergonomist, neither job performed by plaintiff was repetitive enough to expose plaintiff to an increased risk of contracting cumulative trauma disorders, or to cause cumulative trauma disorders. Mr. Gorrod also testified that plaintiff made no complaint during the taking of the supplemental video regarding its accuracy in representing the jobs plaintiff performed.
15. There is insufficient evidence of record from which to determine by its greater weight that plaintiff's employment with defendant-employer caused her to develop an occupational disease or diseases. *Page 6 
16. There is insufficient evidence of record from which to determine by its greater weight that plaintiff's employment with defendant-employer placed her in a position of greater risk than the general public of contracting an occupational disease or diseases.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. In workers' compensation cases, plaintiff has the burden of proving every element of compensability. As part of this burden, plaintiff must present convincing evidence establishing these elements, including, in this case, expert medical testimony. Holly v. ACTS, Inc., 357 N.C. 228,234, 581 S.E.2d 750, 754 (2003); Harvey v. Raleigh PoliceDepartment, 96 N.C. App. 28, 35, 384. S.E.2d 549, 553, disc. rev.denied, 325 N.C. 706, 388 S.E.2d 454 (1989).
2. In order for an occupational disease to be compensable under N.C. Gen. Stat. § 97-53(13), a plaintiff must prove that the disease is characteristic of individuals engaged in the particular trade or occupation in which the plaintiff was engaged, that the disease is not an ordinary disease of life to which the public is equally exposed, and that there exists a causal relationship between the disease and the plaintiff's employment. N.C. Gen. Stat. § 97-53(13); Rutledge v. TutlexCorp., 308 N.C. 85, 93, 301 S.E.2d 359, 365 (1983). Fann v. BurlingtonIndust., 59 N.C.App. 512, 296 S.E.2d 819 (1982); Booker v. Duke MedicalCenter, 297 N.C. 458, 256 S.E.2d 189 (1979).
3. Plaintiff has not proven by the greater weight of the evidence that her employment with defendant-employer caused her to contract carpal tunnel syndrome or cubital tunnel syndrome. N.C. Gen. Stat. § 97-53(13);Rutledge v. Tutlex Corp., 308 N.C. 85, 93, *Page 7 301 S.E.2d 359, 365 (1983), Fann v. Burlington Indust., 59 N.C.App. 512,296 S.E.2d 819 (1982); Booker v. Duke Medical Center, 297 N.C. 458,256 S.E.2d 189 (1979).
4. Plaintiff has not proven by the greater weight of the evidence that her employment with defendant-employer placed her at greater risk than the general public of contracting carpal tunnel syndrome or cubital tunnel syndrome. N.C. Gen. Stat. § 97-53(13); Rutledge v. TutlexCorp., 308 N.C. 85, 93, 301 S.E.2d 359, 365 (1983), Booker v. DukeMedical Center, 297 N.C. 458, 256 S.E.2d 189 (1979).
5. Plaintiff's claim is not compensable under the provisions of the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-1, etseq.
 ***********
Based on the foregoing findings of fact and conclusions of law, the undersigned enter the following:
 ORDER
1. This claim must, under the law be, and hereby is DENIED.
2. Each side shall bear its own costs.
This the 8th day of May 2007
S/_____________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/_____________ BERNADINE BALLANCE COMMISSIONER
 S/_____________ PAMELA T. YOUNG COMMISSIONER *Page 1